### EASTMAN v. CHICAGO & N. W. RY. CO.

*(Circuit Court, N. D. Illinois.   July 22, 1889.)*

PATENTS FOR INVENTIONS—INFRINGEMENTS.

    Letters patent No. 314,170, issued March 17, 1885, to John P. Eastman, for a continuous mileage railroad ticket, claims a ticket consisting of "leaves or sheets bound together in book form, each having a number of mileage coupons, the leaves being connected at alternate ends for tearing off in a single piece the required number of single coupons for mileage traveled."   The original application did not contain the words "bound together in book form," but it was withdrawn, and another substituted, modified by the insertion of those words, and the patent was granted accordingly.   The specifications described the sheets as being disconnected at the sides, but connected at the ends, and as having sufficient margin on the side for binding them into book or other convenient form.   Defendant used a continuous ticket, consisting of coupons of one mile each, printed on a continuous strip of paper, one end being fastened to the lids of the cover, and the strip then being laid in alternate folds, like a pocket map.   The lids of the cover were joined at the back, and closed by an elastic band, so that the strip might be drawn out and coupons cut off on a metallic edge attached to the end of a lid.   *Held,* that the first-named patent was limited to a ticket bound in book form, and was not infringed by merely attaching one end of the strip to the cover.

*West & Bond,* for complainant.
*Geo. Payson,* for defendant.

BLODGETT, J.   This is a bill for an injunction and accounting by reason of the alleged infringement of patent No. 314,170, granted March 17, 1885, to complainant for a "continuous mileage ticket."   The invention covered by the patent is quite clearly and sufficiently described in the following extracts from the specifications:

"This invention relates to railway-tickets commonly known or termed 'thousand-mile tickets,' and consisting of a number of small coupons or tickets, each representing mileage, usually bound in the form of a book.   As such tickets are now issued a number of coupons for one mile each are impressed or printed on a small sheet, the separate coupons being partially separated one from the other by means of a perforated mark or line, to facilitate tearing off, and a number of sheets containing such coupons—usually enough to represent a thousand miles of travel—are bound together as a book, to be carried by the person holding the ticket, and so that the number required to represent the distance traveled can be readily torn off by the conductor.   It often happens that with the present style of putting up these tickets the tearing off of a certain number leaves a single coupon, or two and three coupons, on a

page, to be torn off the next time the book is used; or a few coupons may be torn off from the next succeeding page, and these coupons, being small, are liable to be lost by the conductor or other party handling them, causing considerable trouble and inconvenience in keeping a correct account of the separate coupons belonging to the ticket; and, where a number of such tickets are taken by the same conductor from different books, the sheets, being separate one from the other, and being usually placed all together, become mixed, requiring considerable labor on the part of the conductor to get the separate sheets and pieces of the same ticket together in order to turn them in; and, again, with the present style of these tickets, considerable trouble is experienced in keeping a correct statement of the last number torn off to connect with the first number next torn off, and so on.   The object of this invention is to overcome the objections to this class of tickets, and have such tickets as [are] capable of being used as an ordinary single ticket; and its nature consists in providing such tickets on sheets connected together, to have any required number torn off without becoming disconnected, and leaving those remaining in the book also connected, all as hereinafter more specifically described and pointed out in the claims.   *   *   *   These sheets are disconnected at the side, but are alternately connected at the ends;—that is, the first sheet is connected to the second at the bottom, the second to the third at the top, the third to the fourth at the bottom, the fourth to the fifth at the top, and so on, to the full number of sheets.   *   *   *   The length and width of the sheets are to be sufficient for the size and number of coupons desired for each sheet, with a sufficient margin on the side for binding the sheets for the required number of miles into the form of a book, or other form convenient to be handled by the purchaser of the ticket and the conductor.   *   *   *   The sheets being in effect single sheets, and at the same time a continuous sheet, it will be seen that the conductor, in tearing off a given number of coupons to represent the number of miles for which the ticket has been used, although he may tear through one, two, three, or more sheets, will remove the entire number torn off in a single piece, and the remaining coupons will commence with the next consecutive number, and be all united one to the other."

The patent has but a single claim, which is:

"A railroad ticket consisting of a series of leaves or sheets, bound together in book form, each having a number of mileage coupons, the leaves being connected at alternate ends for tearing off in a single piece the required number of single coupons for mileage traveled, substantially as described."

The defenses set up are (1) that the patent is void for want of novelty; (2) that defendant does not infringe.

The principal feature in all the continuous mileage tickets in use seems, from the proof, to be an arrangement of coupons or strips, representing a series of units of distance which the holder of the ticket is entitled to travel upon it, so that these coupons can be detached and retained by the conductor, and the ticket returned to the passenger as long as any coupons remain unused.   The patent to William B. Shaddock, granted in April, 1881, shows such a ticket, made up of a series of leaves or pages of coupons bound together in book form, the coupons being easily detached by means of lines of perforations.   It also appears from the proof in this case, and I think we may be said to know the same from common knowledge, that coupon tickets for a continuous journey, over several different transportation lines, were in general use long before the complainant's patent.   For instance, a person could buy a ticket

entitling him to a passage from Chicago, Ill., to Bangor, Me., which would have, first, a coupon entitling him to passage from Chicago to Detroit over the Michigan Central Railroad; the next coupon would take him from Detroit to Niagara Falls over the Great Western route, through Canada; the next, from Suspension Bridge to Albany; the next, from Albany to Boston; and perhaps the next, from Boston to his place of destination; or there might be still more coupons between Boston and the place of destination; and, as he passed over the successive links in his route, the conductors would detach the coupons representing said link. These coupons were not bound together in book form, but were printed in consecutive order, from the starting to the termination of the journey, upon a ribbon or strip of paper, and the coupons could be readily folded each way, so as to be easily detached at the foldings. So that we may assume that it was old at the time Mr. Eastman entered the field to issue coupon tickets in a ribbon of continuous coupons, each coupon representing a portion of the route over which the holder was entitled to pass, and each coupon to be detached by the conductor, as the holder passed over the route represented by said coupon. The defendant uses a continuous mileage ticket, consisting of coupons which represent one mile each, printed upon a continuous strip or ribbon of paper, one end of which is fastened to one of the lids of the cover, and the strip then folded in alternate folds upon such cover lid, substantially after the manner in which long pocket maps are folded into a cover, so that they may be unfolded and drawn out at full length. The two lids of the cover, within which the strip is held, are joined at the back, and held close by an elastic band, near what would be the open end, so that the end of the strip can be drawn out from between the lids, and the requisite number of coupons torn off across a metallic straight edge, which is attached to the end of one of the covers, the conditions of the ticket being printed upon the inner side of one of the covers.

The proof also shows that the original claim made by the complainant in his application for his patent was for "a railroad ticket consisting of a series of leaves or sheets, each having a number of mileage coupons, and connected at alternate ends, for tearing off in a single piece the required number of single coupons for mileage traveled, substantially as described." This claim was for some reason withdrawn by the complainant, and the words "bound together in book form," as they now appear in the claim, inserted, and the claim allowed with this modification. This amendment of his claim by the patentee clearly limited his patent to that construction of his ticket in which each leaf of his book is to be bound or fastened into the covers by one of its edges or sides in the manner in which the leaves of a book are bound into a cover. The mere fastening of one end of a map upon the inner face of one lid of the cover, and then folding the map into alternate folds, does not make a binding of a series of leaves in book form, as such expression is usually understood, but each leaf of the series must be bound or fastened into the back of the book so that, if cut apart at the folds, they will still be held in the binding; in other words, a long strip of paper, one end of which is

fastened upon one lid of the cover, intended to embrace the whole strip when folded in a series of leaves, is not binding in book form, but is an old form of cover adopted, not only for holding maps, but, as the proof also shows, for pictures of views, where it is desirable to display a series of pictures or views in a panoramic book form, like defendant's Exhibit "Souvenir of St. Louis." It is true each fold incloses what might be called two leaves, in the defendant's folded strip, but these leaves are not bound in book form by their edges or sides, so that, if cut apart at the folds, they would still be held in the binding, as would be true of the complainant's ticket. To my mind, the defendant's ticket much more nearly resembles the ticket shown in the patent granted to Barnum G. Arnold, in February, 1865, than it does the complainant's ticket. The Arnold patent shows a ticket-holder consisting of a metallic or cylindrical case or shell, about three-eighths of an inch in diameter, and two inches long, with a strip or series of coupons wound upon a spindle to be inserted in the shell, and the end of the ticket drawn through a slot or opening in the shell, until the requisite number of coupons were brought outside the slot, when they were to be torn off across the metallic straight edge of the slot. This old device was public property before the complainant's patent was applied for, and, as it seems to me, the defendant has more nearly appropriated the principle, form of construction, and mode of operation shown in that patent than the principle and form of construction to which complainant has limited himself in his patent. It seems to me that if the Arnold patent was now in force the defendant's ticket would be a palpable infringement of it, as the defendant's cover, held together by an elastic band, would only be a substitute for Arnold's metallic shell or case, while the unfolding of defendant's ticket, as the free end is drawn from between the cover under the elastic band, would be equivalent to the unwinding of the roll from Arnold's spindle. Arnold also shows a flat or box-shaped case, where the coupon strip was evidently to be folded in and drawn out through a slot in the cover, substantially as defendant's ticket is to be drawn. Therefore, without assuming to pass upon the question of the validity of the claim of complainant's patent in the light of the state of the art at the time it was issued, I am fully convinced that the defendant does not infringe upon the device covered by that claim. The bill is therefore dismissed for want of equity.